IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KATHY WALLER, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 4:15-cv-670-Y |
| | § | |
| CITY OF FORT WORTH, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING
## MOTIONS TO STAY DISCOVERY

Various individual defendants filed two motions to stay discovery, *see* Dkt. Nos. 49 & 61, while this case was pending in the Dallas Division of the Northern District of Texas. United States District Judge Jane J. Boyle referred the motions to the undersigned United States magistrate judge for hearing, if necessary, and recommendation or determination pursuant to 28 U.S.C. § 636(b). *See* Dkt. No. 69. This case was then transferred to the Fort Worth Division of the Northern District of Texas, and that referral was vacated. *See* Dkt. No. 103. On September 22, 2015, Senior United States District Judge Terry R. Means re-referred the motions to the undersigned for determination pursuant to 28 U.S.C. § 636(b)(1)(A). *See* Dkt. No. 106.

After considering the motions, the response [Dkt. No. 87], the reply brief [Dkt. No. 100], and the parties' oral arguments presented before the undersigned on September 30, 2015, *see* Dkt. Nos. 107 & 111, and for the reasons and to the extent explained below, the motions [Dkt. Nos. 49 & 61] are GRANTED.

## Background

The general background of this civil rights action, as alleged by Plaintiffs, was set out in Judge Boyle's memorandum opinion and order granting the motion to transfer venue:

> This is an excessive force case stemming from a May 28, 2013 incident where a Fort Worth Police officer shot and killed a private citizen while he stood inside his garage. Specifically, according to Plaintiffs, around 1:00 a.m. that day, an ADT alarm operator phoned the Fort Worth Police Department's 9-1-1 dispatcher to report a burglary at 409 Havenwood Lane North, Fort Worth, TX. The dispatcher then sent two of the Defendants – Fort Worth Police officers Richard Hoeppner and Benjamin Hanlon – to the scene. When the men arrived, they walked down the driveway of 404 – rather than 409 – Havenwood Lane North. A few minutes later, the owner of the home, Jerry Waller, lay dead on the floor of his garage, shot to death by Hoeppner.
>
> Waller's widow, Kathy, and children, Angie and Chris, then sued the City of Fort Worth, Hoeppner, Hanlon, and five other current and former Fort Worth Police officers for wrongful death under 42 U.S.C. § 1983....

Dkt. No. 102 at 1-2 (citations omitted).

As provided in the first amended complaint [Dkt. No. 41] and made clear by Plaintiffs' counsel during the September 30, 2015 oral argument, Plaintiffs and Intervenors Terry Springer and Gayla Kimbrough – both Jerry Waller's children from a prior marriage – are now pursuing claims against the City and six individual defendants – Hoeppner, Hanlon, Merle Green, Dana Baggott, B.S. Hardin, and A. Chambers, all current or former Fort Worth police officers (collectively the "Officer Defendants"). Former Fort Worth Chief of Police Jeffrey Halstead is no longer a defendant.

All Officer Defendants have asserted the affirmative defense of qualified

immunity. Defendants Green and Baggott have moved to dismiss, based in part on qualified immunity, or, alternatively, have requested a Rule 7(a) reply, *see* Dkt. No. 46, and have also asserted the affirmative defense in their answers, *see* Dkt. Nos. 47 & 48. Defendant Hanlon has moved to dismiss based in part on qualified immunity. *See* Dkt. No. 52. Defendant Hoeppner has asserted the affirmative defense in his answer. *See* Dkt. No. 55. And Defendants Hardin and Chambers have moved to dismiss, based in part on qualified immunity, *see* Dkt. No. 60, and have also asserted the affirmative defense in their answers, *see* Dkt. Nos. 108 & 109.

## Legal Standards

"The doctrine of qualified immunity shields 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011)) (internal quotation marks omitted).

A court may address the two prongs of the qualified immunity analysis "in any order." *Luna*, 773 F.3d at 718 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Regardless of which prong is addressed first, a court must decide "whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a

federal constitutional or statutory right." *Luna*, 773 F.3d at 718 (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014); *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)). Put differently, under this prong, a court simply must decide "whether the plaintiff has alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

And a court also must decide "'whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Luna*, 773 F.3d at 718 (quoting *Flores*, 381 F.3d at 395). This prong of the analysis requires a court to determine "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511. That is, even if a government official's conduct violates a clearly established right, the official is entitled to immunity if his conduct was objectively reasonable. *See Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008); *see also Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) ("The dispositive inquiry, we have said, is whether it would have been clear to a reasonable officer in the [defendants'] position that their conduct was unlawful in the situation they confronted." (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)) (internal quotation marks and brackets omitted from original)).

Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam); *see Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) ("We do not require that an official

-4-

demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." (internal quotation marks omitted)); *see also Brooks v. City of West Point*, 18 F. Supp. 3d 790, 794 (N.D. Miss. 2014) ("The usual summary judgment burden of proof is altered somewhat in the case of a qualified immunity defense." (citing *Gates v. Tex. Dep't of Prot. & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008))).

"[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Therefore, where the qualified immunity defense is raised, a court "must first determine whether the allegations in [the] complaint are sufficient to negate [the] assertions of qualified immunity." *Fleming v. Tunica County*, 497 F. App'x 381, 388 (5th Cir. 2012) (per curiam) (citing *Backe*, 691 F.3d at 648; *Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 995 (5th Cir. 1995)). This "demands more than bald allegations and conclusionary statements." *Wicks*, 41 F.3d at 995. A plaintiff "must allege facts specifically focusing on the conduct of [the defendant] which caused his injury." *Id.*

Generally, even if a plaintiff satisfies this heightened pleading standard, the only discovery permitted at this stage – after a defendant has invoked the qualified immunity affirmative defense and before the defense has been resolved – must be narrowly tailored to uncover facts that the court needs to rule on the defense itself. *See Wicks*, 41 F.3d at 994 (citing *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987));

-5-

*accord Backe*, 691 F.3d at 648 ("*After* the district court finds a plaintiff has so pled, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'" (quoting *Lion Boulos*, 834 F.2d at 507-08)); *see also Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) ("[I]f the actions [that a defendant official] claims he took are different from those the [plaintiff] allege[s] ... then discovery may be necessary before [the official]'s motion for summary judgment on qualified immunity grounds can be resolved."); *Watkins v. Hawley*, 4:12-cv-54-KS-MTP, 2013 WL 3357703, at *1 (S.D. Miss. July 3, 2013) ("While qualified immunity was intended to shield a defendant from the burdens of litigation, it does not shield defendants from discovery when there are genuine disputes of material fact which are relevant to the application of qualified immunity." (citing *Behrens v. Pelletier*, 516 U.S. 299, 307-08 (1996))).

The discovery narrowly tailored to uncover only those facts needed to rule on the immunity claim is only permitted if (1) a defendant's immunity claim turns at least partially on a factual question <u>and</u> (2) a court is unable to rule on the immunity defense without further clarification of the facts. *See Lion Boulos*, 834 F.2d at 507-08; *see also Khansari v. City of Houston*, 14 F. Supp. 3d 842, 861 (S.D. Tex. 2014) ("The Fifth Circuit['s] ... careful procedure [allows] a district court [to] defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense.").

As recently summarized succinctly by the United States Court of Appeals for the

Fifth Circuit, the "careful procedure" set forth in *Backe, Wicks,* and *Lion Boulos* requires the district court to first make an initial determination that Plaintiffs' allegations, if true, would defeat qualified immunity and then to "identify any questions of fact it need[s] to resolve before it [is] able to determine whether the defendants were entitled to qualified immunity." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014); *see Webb v. Livingston*, ___ F. App'x ____, 2015 WL 4385287, at *2 (5th Cir. July 17, 2015) (per curiam) ("If the complaint alleges facts sufficient to overcome the defense of qualified immunity, and the district court is 'unable to rule on the immunity defense without further clarification of the facts,' then it may allow discovery 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'" (quoting *Backe*, 691 F.3d at 648 (in turn quoting *Lion Boulos*, 834 F.2d at 507-08))); *cf. Zanitz v. Seal*, 602 F. App'x 154, 163 (5th Cir. 2015) (per curiam) ("conclud[ing] that the magistrate judge abused his discretion in issuing a discovery order that did not perform either of the steps described in *Zapata*"); *Webb*, 2015 WL 4385287, at *3 ("When a district court complies with this procedure, [the Fifth Circuit] lacks jurisdiction to review the interlocutory [discovery] order. However, the court [of appeals] does have jurisdiction if the district court: (1) fails to find that the complaint overcomes the defendant's qualified immunity defense; (2) refuses to rule on the qualified immunity defense; or (3) issues a discovery order that is not narrowly tailored to uncover facts relevant only to the issue of qualified immunity." (citations omitted)). Only if the court identifies any such facts may the court properly issue "a discovery order that is ... narrowly tailored to uncover facts relevant only to the issue of qualified

immunity." *Webb*, 2015 WL 4385287, at *3.

## Analysis

In opposing the motions to stay, Plaintiffs and Intervenors recognize that, as to those defendants who have a right to assert qualified immunity, "the district court has a duty to follow precedent of the Supreme Court and the Courts of Appeal, but [state that they] make this objection in the hope that these courts will reassess and reject the immunity from suit rule of *Harlow v. Fitzgerald*." Dkt. No. 87 at 4. As all of the parties acknowledge, the City of Fort Worth, as a municipality, has no immunity from liability under Section 1983. *See Owen v. City of Independence, Mo.*, 445 U.S. 622, 638 (1980).

This Court, in the posture of determining the two motions to stay, is certainly not in a position to question controlling precedent or the wisdom of the qualified immunity doctrine. Indeed, as to the Officer Defendants, as this Court has done numerous times before, *see, e.g.*, *Hatcher v. Bement*, No. 3:14-cv-432-M-BN, 2015 WL 1511106, at *8-*10 (N.D. Tex. Apr. 3, 2015), and as the Court must do here, because the Officer Defendants have invoked the qualified immunity defense, the Court will follow the Fifth Circuit's "careful procedure" to authorize only limited discovery – if any – that is narrowly tailored to uncover only those facts needed to rule on the immunity claims and <u>only after</u> (1) "determin[ing] that the plaintiffs' allegations, if true, would defeat qualified immunity" and (2) identifying the questions of fact that must be resolved before being "able to determine whether the defendants [are] entitled to qualified immunity," *Zapata*, 750 F.3d at 485 (citing *Backe*, 691 F.3d at 647-49; *Wicks*, 41 F.3d at 994; *Lion Boulos*, 834 F.2d at 506-08).

Relatedly, the opposition to the motions to stay relies on Defendant Hoeppner's not filing a separate motion on qualified immunity but merely raising it as an affirmative defense in his answer. *See* Dkt. No. 87 at 5 ("Kathy Waller should be allowed to proceed with discovery against Defendant Hoeppner since his motion to dismiss was not a motion for qualified immunity. His motion complains only about state law claims that are no longer pled in Plaintiffs' First Amended Original Complaint and therefore, discovery should be able to proceed against Defendant Hoeppner and the City of Fort Worth."). But "filing a motion to dismiss is not required before a defendant can assert qualified immunity as a defense to a discovery order." *Zantiz*, 602 F. App'x at 162 n.7 (noting that "a district court need not rule on a motion to dismiss based on qualified immunity before issuing a discovery order" (citing *Wicks*, 41 F.3d at 997 n.27)).

The Court must also address Plaintiffs and Intervenors' argument that *Dennis v. Sparks*, 449 U.S. 24 (1980) – in which the Supreme Court held that an otherwise private person may act "under color of state law" when he engages in a conspiracy with state officials (there, a judge) to deprive a plaintiff of a federal right – supports their assertion that discovery in this case should not be stayed in light of the Officer Defendants' qualified immunity claims.

In *Dennis*, the judge's co-conspirators attempted to use judicial immunity to urge that they too not be subject to a Section 1983 damages actions, arguing that

> if a case such as this is to go to trial, the charge of conspiracy and judicial corruption will necessarily be aired and decided, the consequence being that the judge, though not a party and immune from liability, will be

heavily involved, very likely as a witness forced to testify about and defend his judicial conduct....

[And the Supreme Court conceded that, o]f course, testifying takes time and energy that otherwise might be devoted to judicial duties; and, if cases such as this survive initial challenge and go to trial, the judge's integrity and that of the judicial process may be at stake in such cases. But judicial immunity was not designed to insulate the judiciary from all aspects of public accountability. Judges are immune from § 1983 damages actions, but they are subject to criminal prosecutions as are other citizens.

*Id.* at 30-31.

After considering the "not insubstantial" concerns, "either for the judge or for the public," the Supreme Court concluded "that the potential harm to the public from denying immunity to private co-conspirators is outweighed by the benefits of providing a remedy against those private persons who participate in subverting the judicial process and in so doing inflict injury on other persons." *Id.* at 31-32.

The holding of *Dennis*, therefore, has nothing to do with the phasing of discovery in a case in which various individual defendants have invoked the affirmative defense of qualified immunity. First, unlike the judge in *Dennis*, no party to this action has yet established a right to immunity. No party, moreover, is advocating that the immunity of another party protects him from liability because the immune party may have to participate in the litigation at some point in the future. Defendants here merely urge the Court to first determine whether any Officer Defendant is entitled to qualified immunity before burdening that defendant with broad or far-reaching discovery.

Therefore, the only issue to be resolved now – before the Court undertakes the analysis required by *Zapata* and the governing decisions it followed – is whether

Plaintiffs and Intervenors are entitled to discovery related to the claims against the City of Fort Worth. *See* Dkt. No. 87 at 5-6 ("Plaintiffs/Intervenors move the Court to permit written discovery with the City of Fort Worth ... since the City has no qualified immunity.... The Plaintiffs/Intervenors further ask the Court that they be permitted to take full depositions of all city personnel, except for Defendants Hanlon, Hardin, Green, Chambers, and Baggott, until such time as the Court has ruled on their motions for qualified immunity and that the Court permit the depositions of other personnel, including crime scene personnel and former Chief Halstead, so that Kathy Waller and the other Plaintiffs/Intervenors can have their day in court.").

In *Ashcroft v. Iqbal*, the Supreme Court observed that

[t]he basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery. There are serious and legitimate reasons for this. If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government....

It is no answer to these concerns to say that discovery for [defendants asserting their right to qualified immunity] can be deferred while pretrial proceedings continue for other defendants. It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if [defendants asserting their right to qualified immunity] are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery.

556 U.S. 662, 685-86 (2009) (internal citations and quotation marks omitted).

At oral argument, Plaintiffs' counsel vigorously contested applying this language broadly to stay discovery as to the City at this time. And the Court was able to locate one district court decision from this circuit in which the court declined to grant a defendant

> the global stay of discovery he request[ed] because *Harlow* and *Iqbal* do not mandate such a broad stay, district courts following *Iqbal* have not uniformly interpreted that decision as imposing such a requirement, the doctrine of qualified immunity only seeks to shield parties from the disruptive aspects of discovery, and countervailing interests in keeping [that] case progressing towards resolution [were] considerable.

*Saenz v. City of El Paso*, No. EP-14-cv-244-PRM, 2015 WL 4590309, at *2 (W.D. Tex. Jan. 26, 2015).

The Court clearly is interested in keeping this case progressing towards resolution. Addressing the sufficiency of the factual allegations in Plaintiffs and Intervenors' operative complaint in light of the Officer Defendants' qualified immunity defenses is part of that progression. And failing to make the findings required by *Zapata* or issuing an overly broad discovery order at this time would only serve to invite a – likely successful – interlocutory appeal of that discovery order, *see Zanitz v. Seal*, 602 F. App'x 154, which would further (and needlessly) delay any future day in court for the Plaintiffs and Intervenors.

Therefore, because the Court finds that Plaintiffs and Intervenors' theories of liability as against the City are factually derivative of those as against the Officer Defendants, the Court must stay discovery as to the City until the Court addresses the Officer Defendants' qualified immunity claims under the framework of *Zapata*.

On point in this regard is *Doe v. El Paso County Hospital District*, No. EP-13-cv-00406-DCG, 2015 WL 3902303 (W.D. Tex. June 23, 2015), in which the claims against the United States were – like the claims against the City of Fort Worth here are – "predicated largely, if not exclusively, on the alleged actions of the individual Defendants." *Id.* at *9. In that case, United States District Judge David C. Guaderrama held that,

> [i]f "protect[ing] the substance of the qualified immunity defense ... so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings," means anything, it must mean that a court should, whenever possible, resolve the qualified immunity issue early and avoid subjecting individual government officers to discovery that is unnecessary to resolving the qualified immunity question.

*Id.* (quoting *Crawford-El v. Britton*, 523 U.S. 574, 597-98 (1998)).

Judge Guaderrama, in staying "all discovery against the United States until such time as the Court rules on the individual Defendants' qualified immunity defense[s]," *id.* (footnote omitted), further noted the court's "'broad discretion to tailor discovery narrowly and to dictate the sequence of discovery'" under Federal Rule of Civil Procedure 26, *id.* (quoting *Crawford-El*, 523 U.S. at 598).

Similarly, in considering a request to stay discovery pending an interlocutory appeal of the denial of qualified immunity on two claims (Counts Three and Four), another judge of this Court allowed "[d]iscovery [to] proceed on those claims that [were] legally distinct and for which a party may not assert the defense of qualified immunity." *Harris v. City of Balch Springs*, 33 F. Supp. 3d 730, 733 (N.D. Tex. 2014) (emphasis added). While, in *Harris*, United States District Judge Sam A. Lindsay

-13-

refused to "read *Iqbal* as requiring a global stay of all pretrial proceedings, including discovery, pending the [resolution] of a defendant's [qualified immunity claim,]" *id.* at 732, there,

> the court [had] already ruled that the allegations of Plaintiff's Complaint, if true, were sufficient to state claims upon which relief could be granted as to Counts Three and Four and that the allegations were sufficient to defeat [Defendant] Morris's entitlement to qualified immunity. Accordingly, the concerns raised and addressed by the Court in *Iqbal* [were] simply not present in or applicable to [that] case.

*Id.* Here, of course, the Court has not reached that determination.

More importantly, in *Harris*, the claims on which Judge Lindsay allowed discovery to proceed while the individual defendant appealed the Court's denial of his qualified immunity claim were "only against the City, not Morris." *Id.* at 733 (citing separate and distinct claims against the City for breach of contract, violation of due process under Section 1983, Title VII race and retaliation discrimination, and race discrimination under Texas law). But, here, Plaintiffs and Intervenors' claims are that all defendants violated their rights under the United States and Texas Constitutions, and, here, there are no claims that are factually and legally distinct to the City of Fort Worth. As such the Court cannot find that proceeding with discovery as to any claims against the City would not be "'disruptive' and will not impede or circumvent any right or entitlement to qualified immunity" asserted by the Officer Defendants. *Id.*

## Conclusion

The Court GRANTS the motions to stay discovery [Dkt. Nos. 49 & 61] for the reasons and to the extent explained above.

SO ORDERED.

DATED: October 2, 2015

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE